UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

JLG Industries, Inc. and
Access Financial Solutions, Inc.,
     Plaintiffs

     v.                                    Civil No. 09-cv-347-SM
                                           Opinion No. 2010 DNH 152
Boston Equipment & Supply Company,
Inc.; Francis P. Rich, Jr.; and
Action Group, Inc.,
     Defendants


**O R D E R**

Plaintiffs sue to recover on debts owed to them by Boston Equipment & Supply Company, Inc. ("BESCO") and Action Group, Inc. — debts that were guaranteed by Francis Rich.  Plaintiffs' claims against BESCO have been stayed in light of BESCO's having filed for bankruptcy protection.  (See Order of May 11, 2010 (document no. 17).)  Before the court is plaintiffs' motion for summary judgment against Action Group (Count IV) and Rich (Counts VI and VII).  Defendants object.  For the reasons given, plaintiffs' motion for summary judgment is granted.


**Summary Judgment Standard**

Summary judgment is granted when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The object of summary judgment is to 'pierce the

boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

**Background**

Except as noted, the following facts are undisputed.  JLG Industries, Inc. ("JLG") manufactures construction equipment.  BESCO regularly purchased machines and parts from JLG over several years.

In March of 2007, to secure payment of debts owed by BESCO (hereinafter "the JLG trade debt"), JLG entered into an equipment and inventory security agreement with BESCO.  JLG filed a UCC-1, covering the collateral listed in the security agreement.  In addition, JLG obtained an individual guaranty on the JLG trade debt from Rich.  Rich admits that he signed the guaranty, but

contests plaintiffs' claim that the guaranty does not require JLG to exhaust its legal remedies against BESCO before looking to him for payment. The guaranty provides as follows:

> In order to induce the JLG Parties to enter into . . . agreements with [BESCO], [Rich] hereby unconditionally and irrevocably guarantees to each of the JLG Parties, and shall be responsible to each of the JLG Parties for, the full and prompt payment, performance and satisfaction by [BESCO] of each and every one of its obligations to any JLG Party . . .
>
> . . . .
>
> . . . It is specifically understood and agreed that <u>the JLG Parties shall not be required to exhaust their legal remedies for recovery and collection against [BESCO] before looking to [Rich] for payment</u>, that the obligation of [Rich] hereunder is not conditional or contingent, but rather absolute and immediate upon any amount due from [BESCO] not being paid, or any obligation of [BESCO] not performed, when due, and that [Rich] shall make any payments and undertake the performance of any obligations due to the JLG Parties hereunder immediately and without delay.

(Pls.' Mot. Summ. J. (document no. 18), Ex. L (emphasis supplied).)

In April of 2009, JLG notified BESCO and Rich that BESCO had defaulted on the security agreement. It demanded that Rich, as guarantor, make payment in full on BESCO's past due invoices, in the amount of $226,988.02. In an agreement executed on April 29, BESCO acknowledged that it owed JLG $221,117.08, and agreed to a payment plan. The April 29 agreement also expressly provided

3

that all other agreements and guaranties remained in full force. BESCO did not meet its obligations under the April 29 agreement. Rich concedes that he owes some amount on the JLG trade debt, but denies that he owes $214,564.98, as claimed by plaintiffs.[1]

On December 18, 2007, BESCO and Action Group executed a promissory note in favor of General Electric Capital Corporation ("GECC"), in the amount of $247,627.36 (hereinafter "the GECC debt").[2]  The promissory note includes the following relevant provisions:

> **BOSTON EQUIPMENT AND SUPPLY COMPANY, INC. . . . AND ACTION GROUP, INC.** . . . promise[ ], jointly and severally if more than one, to pay to the order of **GENERAL ELECTRIC CAPITAL CORPORATION** or any subsequent holder hereof (each, a "Payee") . . . the principal sum of **two hundred forty seven thousand six hundred twenty seven and 36/100 Dollars** ($247,627.36) . . .
>
> . . . .
>
> This Note may be secured by a security agreement . . .

---

[1] Rich does not contest plaintiffs' calculation of the underlying JLG trade debt but, rather, challenges the debt amount on grounds that, should he prevail on his "affirmative defenses," he will be entitled to an offset against the amount owed JLG.

[2] In their complaint, plaintiffs allege that GECC assigned its interests in that note to Access Financial Solutions Inc. ("Access Financial").  In their answer, defendants deny that allegation, but admit that BESCO was notified of the assignment. Even if there is a factual dispute on that point, defendants do not argue that Access Financial's status as a holder of the note is an issue of material fact that would preclude summary judgment for Access Financial.

> . . . If (i) Maker fails to make payment of any amount due hereunder within ten (10) days after the same becomes due and payable . . . then the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sum payable under this Note or any Security Agreement, at the election of Payee, shall immediately become due and payable . . . .
>
> . . . .
>
> . . . Payee shall not be required first to foreclose, proceed against, or exhaust any security hereof in order to enforce payment of this Note.

(Pls.' Mot. Summ. J., Ex. C.)  To secure the GECC debt, BESCO and Action Group granted GECC a security interest in three pieces of equipment, pursuant to Master Security Agreement.  In addition, before GECC accepted the promissory note, Rich executed a personal guaranty in favor of GECC that provides, in pertinent part:

> Nothing herein shall require [GECC] to first seek or exhaust any remedy against [BESCO or Action Group] . . . or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any . . . collateral or security which may be given in connection with the Obligations.  It is agreed that [GECC] may, upon any breach or default of [BESCO or Action Group], or at any time thereafter, make demand upon [Rich] and receive payment and performance of the Obligations . . .
>
> [Rich] agrees that [his] obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by . . . any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document.

(Pls.' Mot. Summ. J., Ex. G.)

In August and September of 2008, BESCO and Action Group failed to make timely payments on the note.  In an agreement dated October 29, 2009, the note was modified.  BESCO and Action Group have not made payments on the modified note since March of 2009, and are currently in default.  At the time the complaint was filed, the GECC debt amounted to $271,023.63.

The complaint also includes allegations concerning BESCO's alleged breach of a bankruptcy work-out agreement, but those claims are stayed.

In Count IV, plaintiffs claim that BESCO and Action Group breached their obligations under the modified promissory note to pay the GECC debt.  Plaintiffs further claim that Rich breached his personal guaranty of the JLG trade debt (Count VI) and the GECC debt (Count VII).[3]  In their answer, defendants succinctly list, but do not develop, eight affirmative defenses, including "[b]reach of implied covenant of good faith and fair dealing" and "[b]reach of fiduciary and quasi-fiduciary duties."

---

[3] Because Count I (seeking replevin of equipment covered by the bankruptcy work-out agreement), Count III (claiming breach of the agreement between BESCO and JLG), and Count V (claiming breach of the work-out agreement) have been brought against BESCO alone, those claims are subject to the automatic bankruptcy stay. Count II seeks replevin against BESCO and Action Group, but is not addressed in plaintiffs' summary judgment motion.

**Discussion**

Plaintiffs seek summary judgment on Counts IV, VI, and VII, on grounds that defendants have conceded liability and no genuine issues of fact exist regarding the amount of either the JLG trade debt or the GECC debt. Defendants object, contending that they have raised triable issues of fact related to their affirmative defenses which preclude summary judgment. Defendants also ask the court to exercise its discretion and defer ruling on plaintiffs' summary judgment motion until after the bankruptcy court determines the extent to which the collateral described in the two security agreements is available to satisfy BESCO's obligations.

Defendants' request for delay is a non-starter. Given the language of the 2007 promissory note and the guaranties given by Rich, plaintiffs are under no obligation to first proceed against the collateral held by BESCO before turning to Action Group and Rich. Accordingly, the court declines to defer ruling on plaintiffs' summary judgment motion.

Turning to the merits, it is undisputed that BESCO breached its April 29, 2009, agreement to pay the JLG trade debt, and that BESCO and Action Group breached their October 29, 2008, agreement to pay the GECC debt. It is also undisputed that, despite

demand, Rich, as guarantor, has not paid either of those debts. Accordingly, plaintiffs are entitled to judgment as a matter of law that: (1) Action Group is liable to Access Financial on the GECC debt in the amount of $271,023.63 (Count IV); (2) Rich is liable to JLG on the JLG trade debt in the amount of $221.117.08, less any payments made by BESCO after April 29, 2009 (Count VI); and (3) Rich is liable to Access Financial on the GECC debt in the amount of $271,023.63 (Count VII). Access Financial is, of course, entitled to only a single recovery on the GECC debt.

As noted, defendants have asserted two "affirmative defenses": breach of the implied covenant of good faith and fair dealing and breach of fiduciary and quasi-fiduciary duties. Defendants suggest that because BESCO and Action Group gave security interests in equipment and inventory to plaintiffs, plaintiffs owed them a fiduciary duty to obtain first-priority status for the resulting liens, to insulate Action Group from liability on the GECC debt and to protect Rich from liability on his personal guaranties of the JLG trade debt and the GECC debt. Action Group and Rich raise those defenses, however, not to contest liability, but to offset the amount they owe plaintiffs under the promissory note and guaranties.

As defendants acknowledge, the theories referred to as "affirmative defenses" are not to be found in Rule 8(c)(1) of the Federal Rules of Civil Procedure. Indeed, defendants' asserted defenses are more in the nature of counterclaims, and the court will treat them as such. See FED. R. CIV. P. 8(c)(2) ("If a party mistakenly designates . . . a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated"). That said, the question becomes whether to treat plaintiffs' motion as seeking summary judgment on both their own claims and defendants' counterclaims or to invite further briefing in light of the court's decision to treat defendants' asserted affirmative defenses as counterclaims. In some situations, the better course after redesignating a defense as a counterclaim would be to invite further briefing, but given the state of this record, that is not necessary. Accordingly, the court turns to defendants' counterclaims against Access Financial and JLG.

Defendants appear to argue that when GECC took the December 18, 2007, promissory note from BESCO and Action Group (who promised to be jointly and severally liable), GECC owed Action Group a duty, fiduciary or otherwise, to obtain first-priority status for its security lien against the three pieces of equipment listed in the Master Security Agreement, so as to

protect Action Group from becoming liable on the note should BESCO fail to perform its obligations.  In defendants' view, because GECC failed to properly perfect its lien by providing purchase money security interest ("PMSI") priority notices to the senior lienholders, Action Group is entitled to a set-off against its obligation to Access Financial in an amount equal to the value of the collateral against which GECC could have, but failed to perfect its lien.

Action Group's claim against Access Financial fails for at least two reasons.  First, plaintiffs have produced evidence that GECC did, in fact, obtain first-priority status for its lien by sending PMSI priority notices to the senior lienholders of record.[4]  Second, the promissory note itself provides that the payee may choose to look to either the maker or the collateral to satisfy a default by the maker, and that the payee is not required to exhaust any available collateral before enforcing the note against the maker.  Accordingly, Access Financial is

---

[4] Rather than producing actual evidence that GECC did not provide senior lienholders with PMSI priority notices, such as affidavits from senior lienholders stating that they received no such notices, defendants produce nothing more than a declaration in which Rich states that, based on his examination of plaintiffs' summary judgment pleadings and record, he did not think that GECC or JLG had sent the notices.  But, of course, there was no reason for plaintiffs to produce evidence on that issue in their summary judgment motion, given that Rich and Action Group first described their "affirmative defense" in their objection to summary judgment.

entitled to judgment as a matter of law on Action Group's counterclaim.

Rich's claims against Access Financial and JLG fail for the same reasons. GECC and JLG did obtain first-priority status for their liens, and the guaranties expressly permit Access Financial and JLG to look to Rich for payment before exhausting their remedies against the obligors and any collateral they may have pledged as security. So, Access Financial and JLG are entitled to judgment as a matter of law on Rich's counterclaims.

## Conclusion

For the reasons given, plaintiffs' motion for summary judgment (document no. 18) is granted. Plaintiffs are entitled to judgment as a matter of law on Counts IV, VI, and VII, to the extent described above. They are also entitled to judgment as a matter of law on defendants' counterclaims.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 24, 2010

cc: Anthony J. Colucci, III, Esq.
    Carolyn E. Kirchberger, Esq.
    Marybeth Priore, Esq.
    Bruce E. Kenna, Esq.
    William S. Gannon, Esq.